# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KENNETH GRAGG,<br><br>Defendant. | No. 13-CR-59-LRR<br><br>**ORDER** |

_____

## *TABLE OF CONTENTS*

*I.    INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.* . . . . . . . . *1*
*III.  STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
*IV.   ANALYSIS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
    *A.    Probable Cause.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
    *B.    Staleness.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *C.    Good-Faith Exception..* . . . . . . . . . . . . . . . . . . . . . . . . . *10*
*V.    CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

## *I. INTRODUCTION*

The matter before the court is Defendant Kenneth Gragg's Objections ("Objections") (docket no. 24) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 23), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 15).

## *II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND*

The parties filed a joint stipulation setting forth the relevant factual background. *See* Joint Stipulation Regarding Suppression Motion ("Stipulation") (docket no. 19). Pursuant to the Stipulation, the parties agree that Judge Sean W. McPartland, an Iowa

District Court Judge, issued a search warrant on January 10, 2013, authorizing law enforcement to search Defendant's residence in Garrison, Iowa. Officers executed the search warrant on January 15, 2013, and seized a shotgun, two AK47 clips, controlled substances and drug paraphernalia. The parties attached to the Stipulation a copy of the Application for Search Warrant (docket no. 19-1) and a copy of the Search Warrant (docket no. 19-2).

As described in Judge Scoles's Report and Recommendation, the Application for Search Warrant set forth the following:

> 1. The affiant, Mark H. Phippen, is a Benton County Deputy Sheriff with 28-1/2 years experience, including a part-time assignment to the Rural Area Interdiction Detail ("RAID"), a multi-jurisdictional drug task force, since 1992.
>
> 2. On May 3, 2005, a confidential informant ("CI") told Phippen that Kenneth Gragg (Defendant herein) deals methamphetamine and marijuana. The CI told Phippen that he had seen Defendant deal methamphetamine 10-12 times and had purchased 4-5 times for himself.
>
> 3. The CI also told Phippen that Defendant had two firearms in his bedroom, including a fully automatic assault rifle and a sawed-off shotgun.
>
> 4. The CI told Phippen that Defendant resided in a trailer at the intersection of Highway 8 and Highway 218 in Benton County. Phippen was able to "confirm" Defendant's address on 58th Street in Garrison, Iowa.
>
> 5. On November 15, 2006, Phippen and other law enforcement personnel went to Defendant's residence on 58th Street in Garrison, based on information that a possible federal fugitive may be hiding there. Defendant gave law enforcement permission to look through the trailer for the wanted person.

6. While looking through the trailer, Phippen observed a glass pipe indicative of the use of methamphetamine. Defendant admitted being a drug user and admitted possessing firearms. Seven firearms were seized — including an AK47 and a shotgun (not sawed-off) — and a small amount of marijuana.

7. The seizure of the AK47, shotgun, marijuana, and packaging material corroborated the information provided by the CI in May 2005.

8. "Within the past year" Phippen received information from another law enforcement agency that Defendant was associating with a known drug dealer from the Marshalltown area.

9. In November 2012, "MS" was in custody in the Benton County Jail for a probation revocation.[1] MS's criminal history includes convictions for making false reports to law enforcement, possession of methamphetamine and drug paraphernalia, and forgery and theft in the second degree.

10. MS told jail staff that she would like to speak with Deputy Phippen. MS then told Phippen that she would "like to broker a deal in exchange for leniency on her probation revocation." According to MS, she could buy methamphetamine from Defendant, and had spent over $35,000 [presumably on controlled substances] from 2006 "until now."

11. Phippen and MS discussed an incident which occurred approximately six months earlier, in the spring of 2012. Phippen observed MS's vehicle parked at Defendant's trailer. After MS left, Phippen conducted a vehicle stop. Phippen asked MS how much meth she had just purchased. MS told Phippen at that time that she had not purchased anything and

---

[1] MS is identified by name in the affidavit attached to the application for search warrant.

3

would allow her vehicle to be searched. Phippen searched the vehicle and found nothing. Two days later, MS called Phippen and asked to speak with him. MS then came to Phippen's office "and apologized for the incident a few days before saying that she had lied and had gotten meth from Ken Gragg and when she saw your affiant she got scared and ate the meth."

12. The Benton County Attorney's Office agreed that MS would be released from jail, that she would make three controlled buys from Defendant, and upon completion "she would receive consideration on her probation revocation."

13. As part of the agreement, MS was required to "drop a UA" before and after each controlled purchase. MS's first UA drop was on November 27, 2012, and was negative. "Safeguards were taken to watch [MS] drop her UA due to in the past she has brought in other urine specimens to pass the UA."

14. The first controlled buy was on November 28, 2012. MS met at the Buchanan County Sheriff's Office, where she and her vehicle were searched by a female officer. She was then equipped with a recording device and provided buy money. Law enforcement officers, including Phippen, followed MS to Defendant's trailer. MS gave Defendant $120 in exchange for one gram of methamphetamine, which was the price agreed to on the phone. MS was then surveilled as she returned to the sheriff's office, where the evidence was secured and a post-buy search was conducted of MS and her vehicle.

15. On November 29, 2012, MS provided a UA, which tested negative.

16. On December 3, 2012, MS submitted another UA, which also tested negative.

>17. The second controlled buy occurred on December 4, 2012. The same procedure which was used on November 28 was used on December 4.
>
>18. On December 5, 2012, MS submitted a UA, which tested negative.
>
>19. On December 19, 2012, MS was arrested in Vinton for shoplifting and taken to the Benton County Jail. Because of her additional criminal activity, the cooperating individual agreement reached with law enforcement was "deactivated."
>
>20. The substance purchased during the controlled buys has been tested and confirmed to be methamphetamine.

Report and Recommendation at 3-5.

On August 15, 2013, the government filed a four-count Indictment (docket no. 2) against Defendant. The Indictment charges Defendant with: (1) two counts of knowingly and intentionally distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); (2) one count of possessing with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); and (3) knowingly possessing a firearm while using methamphetamine and marijuana in violation of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924(a)(2). Count IV includes a forfeiture allegation.

On September 17, 2013, Defendant filed the Motion. In the Brief in Support of the Motion (docket no. 15-1), Defendant argues that Officer Phippen's affidavit in support of the Application for Search Warrant did not establish probable cause and therefore the warrant should not have issued. Defendant further contends that the good-faith doctrine does not render the search legal because no reasonably well-trained officer could have believed that the affidavit established probable cause. On September 23, 2013, the government filed a Resistance (docket no. 20). On October 1, 2013, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On

October 15, 2013, Defendant filed his Objections. The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant argues that the Application for Search Warrant did not establish probable cause for Judge McPartland to issue the warrant, the warrant was stale when executed and that the good-faith exception does not apply because no reasonably well-trained officer could have believed that the Application for Search Warrant established probable cause.

6

## A. *Probable Cause*

In his Objections, Defendant argues that Judge Scoles erroneously found that the Application for Search Warrant established probable cause. Specifically, Defendant contends that MS and the unnamed confidential informant were not reliable.

"Probable cause to issue a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Donnell*, 726 F.3d 1054, 1056 (8th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In determining whether probable cause exists, courts look to the totality of the circumstances and "apply a common sense approach . . . considering all relevant circumstances." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (quoting *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005) (internal quotation marks omitted)). A reviewing court must "pay 'great deference' to the probable cause determinations of the issuing judge or magistrate, and limit [its] inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 236). Because Judge McPartland relied solely on the Application for Search Warrant to issue the warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999)) (internal quotation marks omitted).

The court concludes that Judge McPartland had a substantial basis for concluding that the Application for Search Warrant established probable cause. Defendant objects to Judge Scoles's finding that MS was reliable because the information she provided was corroborated by controlled buys. He contends that this finding is erroneous because "while [MS]'s arrival and departure from [Defendant's] residence on the dates of the controlled buys was surveilled by law enforcement, no officers actually witnessed

7

Defendant selling methamphetamine to [MS]." Objections at 1. However, officers are not required to actually witness a controlled buy or to establish beyond all doubt that a defendant has committed a crime to establish probable cause. Rather, "[p]robable cause to issue a search warrant exists if there is 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Donnell*, 726 F.3d at 1056 (quoting *Gates*, 462 U.S. at 238). Based on the controlled buys, Judge McPartland had a substantial basis to believe that Defendant sold MS methamphetamine and that evidence of methamphetamine distribution would be found at Defendant's residence.[2]

### B. Staleness

Defendant also argues that Judge Scoles erroneously found that the information contained in the Application for Search Warrant was not stale when Judge McPartland issued the Search Warrant and when officers executed it. MS performed controlled buys of methamphetamine from Defendant on November 28, 2012 and December 4, 2012. Judge McPartland issued the Search Warrant on January 10, 2013. Officers executed the warrant on January 15, 2013.

"Probable cause must exist when a warrant is issued, not merely at some earlier time." *United States v. Jeanetta*, 533 F.3d 651, 655 (8th Cir. 2008). However, "there is no bright-line test for determining when information is stale." *United States v. Morrison*, 594 F.3d 626, 631 (8th Cir. 2010) (quoting *Jeanetta*, 533 F.3d at 655). Rather, "staleness is a case-specific inquiry, and probable cause cannot be judged 'by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.'" *United States v. Darr*, 661 F.3d 375, 378 (8th Cir. 2011) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). "A warrant becomes stale

---

[2] While Defendant also argues that Judge Scoles erred in finding that the confidential informant's information was corroborated by a 2006 search, the court does not address this argument because the controlled buys alone were sufficient to establish probable cause.

if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search.'" *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (quoting *United States v. Palega*, 556 F.3d 709, 715 (8th Cir. 2009)). Moreover, "[w]here continuing criminal activity is suspected, the passage of time is less significant." *Jeanetta*, 533 F.3d at 655 (alteration in original) (quoting *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998)) (internal quotation marks omitted). For drug-trafficking crimes, "probable cause may continue for several weeks, *if not months*, of the last reported instance of suspect activity." *Formaro*, 152 F.3d at 771 (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (emphasis in original).

Here, approximately thirty-seven days elapsed from the most recent controlled buy on December 4 until Judge McPartland issued the warrant on January 10. An additional five days elapsed from when Judge McPartland issued the warrant on January 10 to when officers executed the warrant on January 15. The court finds that the information supporting the warrant was not stale and that probable cause existed on January 10 and on January 15 because there was a fair probability that contraband or other evidence would be found at Defendant's residence on January 15. In the Application for Search Warrant, Officer Phippen averred: (1) that he received information in the past year from another law enforcement agency that Defendant was associating with known drug dealers; (2) that MS had purchased methamphetamine daily from Defendant since 2006; and (3) that MS performed controlled buys of methamphetamine from Defendant on November 28, 2012 and December 4, 2012. Taken together, these statements suggest that Defendant was continuously engaged in drug-trafficking activity and that there was a fair probability that contraband would be found at Defendant's residence on January 15. Accordingly, the court finds that the information was not stale.

## C. Good-Faith Exception

Defendant argues that Judge Scoles erroneously found that the good-faith exception applies. The good-faith exception precludes the suppression of evidence when the evidence is "obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). The court has already found that Judge McPartland validly issued the Search Warrant. Thus, for the reasons that the Search Warrant was valid, the court finds that the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

## V. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 24) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 23) is **ADOPTED**; and

(3) The Motion (docket no. 15) is **DENIED**.

**DATED** this 28th day of October, 2013.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA